## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| R JOURNEY, LLC; CEDAR CITY RV RESORT, LLC; CORTEZ RV RESORT, LLC; DIXIE FOREST RV RESORT, LLC, | CV 22-48-BLG-SPW |
| Plaintiffs, | ORDER ON MOTION TO DISMISS |
| vs. | |
| KAMPGROUNDS OF AMERICA, INC., | |
| Defendant/Counter-Claimant, | |
| R JOURNEY, LLC, and DOES 1-10, | |
| Counter-Defendants | |

Before the Court is Plaintiffs R Journey; Cedar City RV Resort, LLC; Cortez RV Resort, LLC; and Dixie Forest RV Resort, LLC's ("Plaintiffs") Motion to Dismiss Defendant's Amended Counterclaims (Doc. 25, "Amended Countercomplaint"). (Doc. 27). For the following reasons, the Court finds dismissal is only warranted as to Counter-Defendants Does 1-10 ("Does 1-10"). The Court also limits the relief available to Defendant Kampgrounds of America, Inc. ("Defendant" or "KOA") based on the joinder issue.

1

## I.   Statement of Facts

Since the 1960s, Defendant has operated campgrounds across the United States and Canada and provided campground rental services.  (Doc. 25 at 11). KOA Journey is one of its types of campgrounds.  (*Id.*).  Defendant has used the word marks KOA and KOA JOURNEY in advertising, on signage, in promotional material, and on social media for the past 10 years to market KOA Journey campgrounds.  (*Id.*).  KOA also owns a registered design trademark that it uses to market its services.  (*Id.* at 11-12).

The parties' briefing reveals little about Plaintiffs, particularly the affiliation between and among them.  R Journey, LLC ("R Journey") apparently operates campgrounds and campground rental services in the U.S.  (Doc. 25 at 13; Doc. 8 at 4).  It is not clear when any of the Plaintiffs came into existence, though Defendant alleges that R Journey did not start using its name as a trademark in commerce until January 31, 2022.  (Doc. 25 at 15).

Sometime in early 2022, Dixie Forest RV Resort, LLC purchased a campground in Panguitch, Utah; R Journey purchased a campground in Cedar City, Utah; and Cortez RV Resort, LLC purchased a campground in Cortez, Colorado ("Complaint Campgrounds").  (Doc. 8 at 4).  Each campground was an independent franchise of Defendant, so Plaintiffs purchased them from independent owners, not Defendant.  (*Id.*).  Plaintiffs apparently did not continue

2

the franchise agreements following the purchase, though Defendant contends that the parties attempted to negotiate an agreement prior to Plaintiffs' purchases and to R Journey adopting its name. (Doc. 25 at 15).

Four other entities apparently affiliated with Plaintiffs—Guardian, LLC; Bryce Canyon RV Resort, LLC; Laramie RV Resort, LLC; and Cheyenne RV Resort, LLC ("Nonentity Parties")—purchased three other KOA franchises in a similar deal. (Doc. 27-3 at 3).[1] These campgrounds are in Laramie, Wyoming; Cheyenne, Wyoming; and Cannonville, Utah ("Countercomplaint Campgrounds"), and are no longer affiliated with Defendant.

Each campground has a Google My Business profile ("GMB") that, prior to Plaintiffs' and Nonentity Parties' campground purchases, Defendant licensed from Google, LLC ("Google"). (Doc. 25 at 17). GMBs allow businesses to manage their presence on Google, including on Google's Search and Map features. (Doc. 8 at 4). As of the filing of the Amended Countercomplaint, Plaintiffs assert that Defendant controls the GMBs for the Complaint Campgrounds. Defendant denies

---

[1] Plaintiffs have not explained their connection with Nonentity Parties, which has contributed to some of the confusion in this case. However, Plaintiffs imply that they are affiliated with Nonentity Parties because Plaintiffs' business analyst declared that he worked for Plaintiffs and Nonparty Entities. (Doc. 27-3 at 2). Additionally, consumers apparently can book campgrounds owned by Nonentity Parties and Plaintiffs through R Journey's website, and though R Journey contends it does not control the Google My Business profiles for any of the campgrounds, it has apparently linked to the Google My Business profiles on its website, and vice versa. (Doc. 25 at 19).

this contention. (*Cf.* Doc. 8 at 5 and Doc. 25 at 4). The parties seem to agree that Plaintiffs control the GMBs for the Countercomplaint Campgrounds. (Doc. 25 at 16).

The parties also contest whether Plaintiffs' purchase agreement included the GMBs: Plaintiffs allege they purchased all the intangible assets of the campgrounds, which included the GMBs. Defendant asserts that it held the license to the GMBs, and since it was not a party to the purchase agreements, Plaintiffs have no right to the GMBs. (*Cf.* Doc. 8 at 4-6 and Doc. 25 at 16-17).

Plaintiffs' suit stems from Defendant's refusal to transfer the GMBs for the Complaint Campgrounds to Plaintiffs. Defendant countersued, alleging that R Journey's use of its name, the management of Countercomplaint Campground GMBs, and the display of GMB reviews containing Defendant's goodwill on R Journey's website violate Defendant's registered and unregistered trademarks. Plaintiffs filed this motion to dismiss the Amended Countercomplaint's first count ("Counterclaim 1") for vagueness and overly complicating the litigation, and the second count ("Counterclaim 2") for failure to join required parties, failure to state a claim, and vagueness. (Doc. 27). Plaintiffs also seek dismissal of Does 1-10 for failure to state a claim.

## II.   Legal Standards

### A.   *Motion to Dismiss for Failure to Join a Required Party*

4

Rule 12(b)(7) provides for dismissal when the non-movant has failed to join a required party, as defined by Rule 19. Fed. R. Civ. P. 12(b)(7). When considering a motion to dismiss under Rule 12(b)(7), the moving party has the burden of persuasion to demonstrate that the nonparty must be joined. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The Court accepts as true the allegations in the challenged pleading and draws all reasonable inferences in the non-movant's favor. *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony v. City of Los Angeles*, 637 F.3d 993, 996, n.1 (9th Cir. 2011). Importantly, the Court may consider evidence outside the pleadings. *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

B.     *Motion to Dismiss for Vagueness and Failure to State a Claim*

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the rule "does not require detailed factual allegations ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

A party can test a pleading's legal sufficiency by moving to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

5

12(b)(6).[2]  To survive 12(b)(6) motion, the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the pleading alleges enough facts to draw a reasonable inference that the accused is liable.  *Id.*  Though the pleading does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, the Court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant.  *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012).  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.   Analysis

### A.   *Failure to Join a Required Party*

Plaintiffs assert that the Court should dismiss Counterclaim 2 under Rule 12(b)(7) for failure to join required parties.  (Doc. 27-1 at 25).  Whether a nonparty must be joined poses three successive inquiries: (1) whether a nonparty is

---

[2] A motion to dismiss a complaint and a countercomplaint for failure to state a claim are evaluated under the same standard.  *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 950 (N.D. Cal. 2015).

necessary; and if so, (2) whether it is feasible to order that the absentee be joined; and if not, (3) whether the case can proceed without the absentee, or the action should be dismissed. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). These questions are practical, fact specific, and designed to avoid the harsh results of rigid application. *Makah Indian Tribe*, 910 F.2d at 558; *Eldredge v. Carpenters 46 N. Calif. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981), *cert. denied*, 459 U.S. 917 (1982).

### 1. Necessary Party

A nonparty is necessary and must be joined if either:

> (1) in the nonparty's absence, complete relief cannot be granted among those already-present parties, or
>
> (2) the nonparty claims an interest relating to the subject of the action, and is so situated that the disposition of the action may either (i) impede or impair the nonparty's ability to protect their interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest.

Fed. R. Civ. P. 19(a). Complete relief concerns the relief the complaining party requested and is "independent of the question of whether relief is available to the absent party." *Makah Indian Tribe*, 910 F.2d at 558. Further, the Court evaluates whether "consummate rather than partial or hollow relief" can be granted. *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1996), *cert. denied*, 520 U.S. 1209 (1997). At the same time, the Court's analysis is narrow and focuses on "rendering complete justice among those already joined"

rather than avoiding multiple litigation. *Friends of the E. Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp. 2d 1260, 1271 (W.D. Wash. 2005).

As for whether the nonparty has a legally protected interest in the suit, the interest does not need to be a property right in the due process sense but must be more than a financial stake. *Makah Indian Tribe*, 910 F.2d at 558; *Am. Greyhound Racing, Inc. v. Hull*, 605 F.2d 1015, 1023 (9th Cir. 2002).

Plaintiffs contend that Nonparty Entities are necessary because Nonparty Entities control the GMBs for the Countercomplaint Campgrounds. (Doc. 27-1 at 25-27). As such, without Nonparty Entities, the Court cannot order the transfer or deletion of the GMBs, the marking of the GMBs as permanently closed, or cessation of the use of marks that infringe on Defendant's marks, as requested by Defendant. (*Id.* at 25-28). Additionally, since Nonparty Entities control the GMBs, they have a protected interest in their disposition that would be affected by the litigation. (*Id.* at 27-28). Plaintiffs finally note that Defendant knows Nonparty Entities have such interests because Defendant included Nonparty Entities in its first countercomplaint (Doc. 11) as liable parties for acts that, in the Amended Countercomplaint, Defendant only ascribed to "R Journey or its predecessor, agent, affiliate, and/or subsidiary." (*Id.* at 20).

Plaintiffs also argue that Google is a necessary party because Google owns the GMBs, and thus has a protected interest in their disposition. (*Id.* at 28).

8

According to Plaintiffs, since Nonparty Entities are licensees of the GMBs, any order to transfer ownership of, alter, or delete a GMB would require Google's participation and affect Google's interest as the owner of the GMB. (*Id.*).

In response, Defendant asserts that R Journey must have sufficient ownership or control over the GMBs because the links to R Journey's website are displayed on the GMBs, and the GMBs are linked on R Journey's website. (Doc. 34 at 20). Additionally, R Journey's website displays consumer reviews for the Countercomplaint Campgrounds originally posted on the GMBs. (*Id.*). Given R Journey has demonstrated some amount of control over the GMBs, the Court can, at minimum, order R Journey to delete any content from its website that contains Defendant's goodwill, refrain from posting any such content in the future, and adopt non-infringing branding and trademarks. (*Id.* at 21). Defendant does not discuss the interests held by Google or Nonparties Entities.

The Court agrees with Plaintiffs that Nonparty Entities are necessary parties because Nonparty Entities have a protected interest in the litigation and actual relief cannot be granted without them. According to the Amended Countercomplaint, "R Journey and/or its predecessor, agent, affiliate, or subsidiary used the Google instructions" to request ownership of the GMBs at issue. (Doc. 26 at 15-16). Even accepting this as true, as this Court must, Plaintiffs sufficiently

demonstrate that Nonparty Entities, as R Journey's corporate affiliate(s), in fact control the GMBs. (Doc. 27-1 at 26, Doc. 27-3 at 2-3).

Defendant does not contest that Nonparty Entities control the GMBs, but rather contends that R Journey, at minimum, shares in that control to the extent that relief can be afforded. (Doc. 34 at 20-21). However, a situation in which R Journey shares control of the GMBs still does not divest Nonparty Entities of their interests, which would be impacted by the relief requested regarding the control of and representations made on the GMBs. Furthermore, for the Court to grant any of the alterative requests for relief related to the GMBs, Nonparty Entities, as the controllers of the GMBs, would need to act or consent to action. Without them, the Court cannot order anything related to the disposition of the GMBs. Accordingly, Nonparty Entities are necessary parties.

Google, however, is not a necessary party because the Court can grant complete relief without it. Plaintiffs argue that Google is required only for the relief related to the GMBs. Defendant presented three options for adequate relief related to the GMBs: for R Journey to (1) transfer ownership of the GMBs back to Defendant, (2) delete the GMBs, or (3) mark them as permanently closed. (Doc. 25 at 25). From the Court's understanding of GMBs, Google would not need to act for R Journey or Nonparty Entities to mark the GMBs permanently closed or transfer control of the GMBs to Defendant. (Doc. 25 at 16 (citing Google support

10

link to transfer primary ownership of a GMB); Doc. 27-3 at 2 (citing to additional terms of service for GMBs, which explain that Google is not responsible for the content of a GMB)). Nor would those forms of relief impact Google's property interest: The GMB would still exist, and the license fee would still be paid. Given the requested forms of relief relating to the GMBs are in the alternative, the Court can grant complete relief on the issue without considering deletion of the GMBs.

The Court recognizes that Google has a protected interest in the existence of the GMBs, since it owns and licenses GMBs to business owners. In a typical infringement case, the licensor/exclusive licensee relationship between Google and the respective parties likely would require the Court to find Google is a necessary party. *See Waterman v. Mackenzie*, 138 U.S. 252 (1891) (holding a patent owner is a necessary party in an action by an exclusive licensee); *Cable Vision, Inc. v. KUTV, Inc.*, 335 F.2d 348 (9th Cir. 1964) (extending *Waterman* to copyrights). However, the fact that GMBs can be transferred to other licensees and marked as permanently closed without the input of Google demonstrates that, practically, Google has no interest in the disposition of the GMBs if the disposition is limited to transfer or marking the GMB as closed.

Further, Google presumably licenses GMBs to thousands of businesses around the world, so forcing it to join this action would set up Google to be joined in every case in which the GMBs are implicated, even if Google is not required for

11

relief. As such, strictly applying the licensor/licensee rule here would contravene the pragmatic approach the Court must take in deciding whether a party is required under Rule 19. *See also Bevan v. Columbia Broad. Sys.*, 293 F. Supp. 1366 (S.D.N.Y. 1968) (while joinder of a nonparty "would suit plaintiffs' convenience," it would not serve the nonparty's interest because it "would be dragged unwillingly into a suit that essentially presented claims between others only").

Instead, the Court finds that limiting the relief related to the GMBs (at this step in the analysis) to either requiring Plaintiffs to transfer ownership of the GMBs or to mark them as permanently closed is not only consistent with Rule 19's practical and fact-specific approach but also ensures that the Court can grant some kind of relief related to the GMBs to Defendant.

### 2. Feasibility

Having determined that Nonparty Entities are necessary parties, the Court next evaluates whether it is feasible to join them. It is not feasible for a party to be joined if the Court does not have subject matter or personal jurisdiction over them, or venue is improper. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). Here, because the counterclaims are federal questions, subject matter jurisdiction is not at issue, nor is it contested.

Personal jurisdiction is governed by Montana law and the Constitution. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

The relevant state law provision is Montana's long-arm statute—Montana Rule of Civil Procedure 4(b). *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 578 (9th Cir. 2011). The relevant constitutional provision is the Fourteenth Amendment's Due Process Clause. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1024 (2021). When assessing its personal jurisdiction, this Court asks whether: (1) Montana's long-arm statute permits the exercise of personal jurisdiction; and (2) if so, whether due process is offended by the Court's exercise of personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006). The jurisdictional analyses under Montana law and federal due process are the same. *King*, 632 F.3d at 578-79.

The Court's personal jurisdiction analysis therefore hinges on whether Nonparty Entities have a sufficient relationship to Montana, such that "the maintenance of the suit ... does not offend traditional notions of fair play and substantial justice." *Ford Motor*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The relationship can be established through general or specific jurisdiction. *Id.*

### a. General Jurisdiction

General jurisdiction attaches to a party who is "at home" in the forum state, regardless of the connection between the events of the lawsuit and the forum. *Id.*

For corporations, a party is at home in both their place of incorporation and principal place of business. *Id.*

None of the Nonparty Entities are at home in Montana: Bryce Canyon RV Resort is incorporated and has its principal place of business in Utah; Laramie RV Resort and Cheyenne RV Resort are incorporated and have their principal places of business in Wyoming; and Guardian is incorporated and has its principal place of business in Washington. (Doc. 37-1 at 2). As such, this Court does not have general jurisdiction over any of the Nonparty Entities.

### b. *Specific Jurisdiction*

Specific jurisdiction turns on whether the party has had some contact with the forum state and the lawsuit stems from that contact. *Id.* Montana's long-arm statute outlines a variety of acts that subject the party to specific personal jurisdiction for suits related to those acts if committed in Montana. Mont. R. Civ. P. 4(b)(1)(A)-(G); *Buckles ex rel. Buckles v. Cont'l Res., Inc.*, 402 P.2d 1213, 1217 (9th Cir. 2017). One such act is a tort that accrued in Montana. Mont. R. Civ. P. 4(b)(1)(B). In the Ninth Circuit, trademark infringement is treated as tort-like for personal jurisdiction purposes, so trademark infringement that occurs in Montana will provide personal jurisdiction over the infringer. *Wolves of the Rockies, Inc. v. Stone*, No. 21-140-M-DLC, 2022 WL 123770, at *5 (D. Mont. Jan. 13, 2022) (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 927, 979 (9th Cir. 2021)).

Defendant does not aver in the Amended Countercomplaint that Nonparty Entities committed any tortious acts that accrued in Montana. Further, Defendant refused to respond to Plaintiffs' contention that Nonparty Entities have not committed any tortious acts that accrued in Montana. Instead, Defendant cabins its analysis to whether Nonparty Entities are required parties. (Doc. 38 at 2-3).

The Court agrees with Plaintiffs that the Amended Countercomplaint does not allege any conduct by Nonparty Entities that would be considered a tort accruing in Montana. Rather, the Amended Countercomplaint takes issue with campgrounds in Wyoming and Utah, and the use of KOA's protected trademarks on the Internet. Neither are sufficient to satisfy personal jurisdiction over Nonparty Entities.

Because the Court does not have personal jurisdiction over Nonparty Entities, it is infeasible to join them.

### 3. Indispensability

"If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Whether the Court dismisses or retains a case is informed by the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* If the Court finds dismissal is necessary, a party is deemed indispensable.

Here, the Court's ability to shape the requested relief weighs heavily in favor of retaining the case. The Amended Countercomplaint outlines two categories of allegedly unlawful conduct: R Journey's use of its name, and actions related to the Countercomplaint GMBs. The former only implicates R Journey, so full relief can be granted on that issue without Nonparty Entities.

Generally, the conduct related to the Countercomplaint GMBs implicates both R Journey and Nonentity Parties. However, within this category of conduct, the Court can preliminarily delineate between actions solely taken by R Journey and actions taken by either R Journey and Nonentity Parties, or Nonentity Parties alone. For instance, Defendant sufficiently pleads (and R Journey has not contested) that R Journey has full control over the linking and display of the Countercomplaint GMBs and GMB reviews on R Journey's website. As such, the Court can grant full relief stemming from these actions without joining Nonentity Parties. Conversely, the Court cannot grant relief related to the control of the

Counterclaim GMBs without joining Nonparty Entities, since Nonparty Entities, at least in part, control them.

Shaping the relief to only allow relief from actions R Journey took on its own "render[s] complete justice among those already joined" because Defendant can obtain relief for each category of alleged wrongdoing. *Friends of the E. Lake Sammamish Trail*, 361 F. Supp. 2d at 1271. Dismissing the case, on the other hand, would serve only the convenience of the parties and to avoid multiple litigation. *Id.*

Plaintiffs argue that Defendant's description in its response brief of its requested relief is overly narrow and contorts the joinder analysis. However, Plaintiffs overlook the express language of Rule 19(b)(2)(B), which permits the Court to consider how it can shape relief to lessen or avoid prejudice to the absent party. Defendant's characterization of its requested relief in its response brief accomplishes that goal.

The Court also refuses to read into Defendant's removal of Nonparty Entities and recharacterization of the liable party/parties in its Amended Counterclaim, as compared to the first counterclaim. "[T]he general rule is that an amended complaint super[s]edes the original complaint and renders it without legal effect." *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). As such, the Court does not consider Defendant's first

counterclaim, let alone make inferences about the necessity or indispensability of a party by comparing the first and Amended Counterclaims.

Accordingly, the Court denies the motion to dismiss for failure to join. The Court shapes the relief related to the Counterclaim GMBs to exclude anything that requires Nonparty Entities. Instead, the relief will be limited to actions solely under the control of R Journey. Discovery will elucidate what actions fall in which category, but for now, the Court is satisfied it can grant relief related to each category of alleged wrongdoing without the Nonparty Entities.

## B.   Failure to State a Claim

Plaintiffs next allege Defendant fails to state a claim for common law trademark infringement and false designation of origin/false advertising. Given the confusion over what claims Defendant is asserting, the Court will address this first.

### 1.  Characterizing the Legal Basis of Counterclaim 2

The Lanham Act provides relief for infringement of trademarks registered with the U.S. Patent Office and of unregistered trademarks. Claims for infringement of registered trademarks are made under 15 U.S.C. § 1114, while claims for infringement of unregistered trademarks—or common law trademark infringement—are made under § 1125(a)(1)(A). 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:9 (Dec. 2022). The cause

of action under § 1125(a)(1)(A) is called a claim for false designation of origin or false association. *Id.*

Importantly, claims for common law trademark infringement cannot be made under § 1125(a)(1)(B), which prohibits false advertising. *Id.* §§ 27:12, 27:14. *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."). A false advertising claim concerns the nature, characteristics, or qualities of the services, whereas a false designation of origin claim concerns the non-geographic origin or affiliation of the services. *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1305 (9th Cir. 2000).

The elements of each claim are also different. To assert a false designation of origin claim, a party must first prove the validity of the unregistered trademark. McCarthy, *supra*, § 27:14. A valid trademark is a word, name, symbol, device, or any combination thereof that is either: (1) inherently distinctive, or (2) descriptive, but has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

Once a party has demonstrated the validity of the unregistered trademark, it must plead a prima facie case for infringement. A prima facie case of infringement has the following elements: (1) the other party uses a designation (word, term,

symbol, or device, or any combination thereof), or a false designation, of origin;

(2) in interstate commerce; (3) in connection with goods and services; (4) when the

designation is likely to cause confusion, mistake, or deception as to either (i) the

affiliation, connection, or association of the alleged infringer with another person,

or (ii) as to the origin, sponsorship, or approval of the infringer's services; and (5)

the party claiming infringement has been or is likely to be damaged by these acts.

McCarthy, *supra*, § 27.14.  The core of a prima facie infringement case is the

likelihood of confusion element.

A false advertising claim, on the other hand, requires a false statement of

fact in an advertisement about a party's or another's product that deceived or has

the tendency to deceive consumers. *Cook, Perkiss and Liehe, Inc. v. N. Cal.*

*Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).  The statement must be

literally false, or literally true but likely to mislead or confuse consumers.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Here, Plaintiffs allege—and Defendant seems to agree—that Counterclaim 2

contains common law trademark infringement, false designation of origin, and

false advertising claims.  (Doc. 27-1 at 15-16; Doc. 34 at 8-13).  As explained, the

statutory vehicle for a common law trademark infringement claim under federal

law is the false designation of origin provision in § 1125(a)(1)(A).  So, a common

law trademark infringement claim is not separate from a false designation of origin

claim. However, a false advertising claim is entirely separate from and cannot be embedded in a false designation of origin claim, as the parties seem to believe, since false advertising has nothing to do with trademark infringement.

Looking to the Amended Countercomplaint, the Court recognizes that Defendant labels Counterclaim 2 as both false designation of origin and false advertising. (*See* Doc. 25 at 23). On the surface, the Court agrees with Plaintiffs that this is confusing. However, the substance of the claim is clearly for an action under § 1125(a)(1)(A): Defendant argues that consumers associate the unregistered marks with Defendant's services and so the marks are protected, that Plaintiffs' use of a name so similar to Defendant's marks confused consumers about the affiliation of Countercomplaint Campgrounds with Defendant, and that the confusion has caused Defendant to lose revenue and negatively impacted its goodwill. (*Id.* at 23-24).

Furthermore, nothing in the Amended Countercomplaint states a claim for false advertising. In the first place, Counterclaim 2 does not discuss whether Plaintiffs misrepresented the nature, quality, or characteristics of their campgrounds or campground booking services. Rather, it argues Plaintiffs misrepresented their services' affiliation, or lack thereof, with KOA. Furthermore, as Plaintiffs point out, Defendant never alleges Plaintiffs made a false statement.

Confusingly, Defendant is adamant in its response brief that it stated a claim, in part, for false advertising. (Doc. 34 at 14-15). However, its support for its false advertising claim again tracks the elements of false designation of origin. Accordingly, if Defendant meant to assert a false advertising claim instead of or in addition to its false designation of origin claim, the Court agrees with Plaintiffs that Defendant insufficiently pleads its elements because it never alleged that Plaintiffs made a false statement.

However, on a motion to dismiss, the Court must evaluate the sufficiency of the *pleadings*, and Defendant's pleading substantively asserts a claim for false designation of origin.

### 2. Sufficiency of Pleading of False Designation of Origin

Having determined Counterclaim 2 alleges false designation of origin, the Court next evaluates the sufficiency of Defendant's pleading under Rule 12(b)(6).[3] The two elements of a false designation of origin claim are the validity and infringement of the unregistered trademark.

### a. Validity of Marks

---

[3] The Court applies the pleading standard of Rule 8 because Counterclaim 2 is for false designation of origin, not false advertising. Plaintiffs assert that both types of claims are evaluated on a motion to dismiss with Rule 9(b)'s heightened pleading standard. However, each of the cases Plaintiffs cite only concerns false advertising. Conversely, in *Choon's Design*, the court explicitly applied Rule 8 to the false designation of origin claim and Rule 9 to the false advertising claim. *Choon's Design, LLC v. ContextLogic Inc.*, No. 19-CV-05300-HSG, 2020 WL 6891824 (N.D. Cal. Nov. 24, 2020).

As stated, a trademark is valid (and thus protected from infringement) if it is either (1) inherently distinctive, or (2) descriptive, but has acquired second meaning. *Two Pesos, Inc.*, 505 U.S. at 769. A mark is inherently distinctive if it is suggestive, arbitrary, or fanciful. *Id.* at 768. A descriptive mark has secondary meaning if the "primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938). *See also Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970) ("Secondary meaning has been defined as association, nothing more.").

To determine if a descriptive mark has secondary meaning, the Court considers: "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc)).

Finally, an unregistered mark is protected only in "all areas in which it has legally sufficient market penetration." *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002). Most often, market penetration is limited to specific

areas; however, trademark users can allege their mark has acquired a national reputation and receive protection everywhere, including areas where the party has no sales. *Id.* at 985.

Plaintiffs allege that Defendant insufficiently states that its unregistered marks—separate from its registered mark—are distinctive and have sufficiently penetrated the markets in which it seeks protection. (Doc. 27-1 at 18-20). Defendant argues that it described with sufficient factual support its marks' distinctiveness and territorial reach in explaining that it has used the marks for almost 10 years in 43 states and across Canada in advertising, signage, promotional material, and social media. (Doc. 34 at 17 (citing Doc. 25 ¶¶ 9-19)). Defendant further notes that "substantial sums have been invested in advertising and promotion of its services under the KOA marks which have come to be recognized as identifying Defendant's businesses and their services." (*Id.*).

Accepting the facts of the Amended Countercomplaint as true, the Court finds Defendant sufficiently pleads distinctiveness and territorial reach. Defendant described its extensive efforts in the last 10 years to display the marks, and how those displays have led to consumers associating the marks with Defendant. (Doc. 25 at 11). Contrary to Plaintiffs' assertions, Defendant specifically alleges that the efforts described were specific to the word marks KOA and KOA JOURNEY. (*See id.*). Defendant later characterizes the distinctiveness of the unregistered and

registered marks together, but that does not divest from the statements made only about the unregistered marks. (*Cf. id.* at 11 and *id.* at 12). As proof of its efforts' success, Defendant points to the hundreds of reviews on the GMBs for Defendant's campgrounds that used the marks. (*Id.* at 16).

Furthermore, Defendant sufficiently alleges that its marks have acquired national reputation, and thus territorial specificity is not relevant to the Court's analysis. Defendant states that it has used KOA and KOA JOURNEY in 43 states and Canada for the last 10 years on signs for campgrounds, ads, promotional material, and social media. (*Id.* at 11). Combined, the duration and reach of Defendant's use of the marks is sufficient for the Court to find, on a motion to dismiss, that Defendant's unregistered marks carry a national reputation that protects them from infringers.

### b. Infringement

As to the five elements of infringement, the parties only dispute whether Defendant sufficiently states that R Journey's use of marks similar to those of Defendant was likely to confuse consumers as to the affiliation between R Journey and KOA. A likelihood of confusion exists when consumers "are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.'" *Metro Publ'g, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993)

(internal quotations omitted). Courts analyzing the likelihood of confusion look at eight factors: (1) the strength of the mark; (2) the similarity of the marks; (3) proximity of the goods/services; (4) similarity in the marketing channels used; (5) the type of goods/services and the degree of care likely to be exercised by purchasers; (6) evidence of actual confusion; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341-49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810, n. 19 (9th Cir. 2003).

For infringement on the Internet, "the three most important *Sleekcraft* factors … are (1) the similarity of the marks, (2) the relatedness of the services, and (3) the parties' simultaneous use of the Web as a marketing channel." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). When the "Internet trinity" factors suggest a likelihood of confusion, the other *Sleekcraft* factors must weigh strongly against a likelihood of confusion for the court to find no infringement. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011).

Starting with the Internet trinity, the Court finds that the three factors point strongly toward a likelihood of confusion. R JOURNEY and KOA JOURNEY both employ the word 'Journey' to market campground booking services and/or campgrounds in the U.S. Additionally, R JOURNEY, KOA JOURNEY, and KOA

are all used in online marketing, namely on the GMBs and the parties' respective campground booking websites, to promote campground services.

Turning to the other *Sleekcraft* factors, none strongly weigh against a likelihood of confusion. In fact, Defendant demonstrates actual confusion with screenshots of consumer reviews posted to the GMBs after the campgrounds' sale that make comments about Defendant, as if Defendant controlled the GMBs and managed the associated campgrounds. (Doc. 25 at 18). Further, the controller of the GMB—presumably R Journey or a Nonparty Entity—acknowledged the confusion by replying to the reviews that the reviews reference Defendant and its goodwill, and must be removed. (*Id.*). Other than personal consumer testimony, little other evidence could more strongly indicate confusion.

R Journey's intent in choosing its name also weighs in favor of a finding of confusion. Defendant explains Plaintiffs only chose the name R Journey after failing to negotiate franchise agreements with Defendant. (Doc. 25 at 15). Furthermore, Defendant avers that R Journey's selection was driven by the widespread recognition KOA JOURNEY has. At this stage, the Court must accept these allegations—which favor a likelihood of confusion—as true.

As such, the Court finds Defendant sufficiently pleads false designation of origin and denies Plaintiffs' motion to dismiss for failure to state a claim.

## C.    Vagueness

Plaintiffs next assert the entire Amended Countercomplaint falls short of the Rule 8(a)(2)'s pleading standard "because it is unclear who Defendant is suing and what claims Defendant is bringing." (Doc. 27-1 at 21).  First, the Court already addressed the latter issue, finding that the substance of Defendant's Counterclaim 2 is a common law trademark infringement claim made through § 1125(a)(1)(A)'s false designation of origin provision.  It is also clear Counterclaim 1 is for infringement of Defendant's registered trademark under § 1114.

Second, the Court disagrees that the Amended Countercomplaint is overly vague as to who it is suing.  At a minimum, Defendant clearly connected R Journey's use of the mark R JOURNEY, the posting of the GMB reviews with Defendant's goodwill on its website, and the infringement of Defendant's trademarks.  Though R Journey's specific role in the alleged unlawful control of the GMBs is not clear, Defendant's allegations relating to the GMBs themselves is only a portion of the Amended Countercomplaint.  Furthermore, R Journey's specific role or lack thereof in any unlawful conduct stemming from the use of GMBs likely will be revealed in discovery.

Accordingly, the Court denies Plaintiffs' motion to dismiss for vagueness.

## D.    Does 1-10

Plaintiffs next move to dismiss Does 1-10 for failure to state a claim on the ground that Defendant did not specifically allege any wrongdoing by Does 1-10. (Doc. 27-1 at 23).  A party may name fictitious defendants in order to identify the unknown defendants through discovery.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, a pleading naming fictitious defendants must allege specific conduct by those defendants.  *See McBryde v. Thomas*, CV 12-76-H-DLC-RKS, 2012 WL 6923331, at *4 (D. Mont. Nov. 27, 2012) (dismissing Doe defendants when the plaintiff failed to allege facts connecting any Doe defendants with an alleged violation of law); *Knaubert v. Last Forced Medication Comm.*, CV 14-158-PHX-SMM (SPL), 2014 WL 3368430, at *3 (D. Ariz. July 10, 2014) (same).

The Court finds that Defendant failed to allege facts connecting Does 1-10 with an alleged violation of law.  The only mention of the conduct of Does 1-10 reads, "KOA alleges, on information and belief, that each such fictitiously named Counterclaim Defendant is in some manner responsible for the acts alleged herein and that such Counterclaim Defendant proximately caused the injuries alleged herein." (Doc. 25 at 10).  This reference does not outline any specific conduct and thus does not meet the standard for naming Doe defendants.

Defendant asserts it properly alleged that R Journey acted "in concert with others" to infringe on Defendant's trademarks and to unfairly compete.  (Doc. 34 at

29

19).  The Court assumes by "others," Defendant means R Journey's "predecessor, agent, affiliate, and/or subsidiary."  However, as Plaintiff notes, Defendant never explicitly states that Does 1-10 are or might be R Journey's predecessor, agent, affiliate, and/or subsidiary.  The Court refuses to make the inference, particularly given the disfavor with which Doe pleadings are considered in the Ninth Circuit. *See Lopes v. Vieira*, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008).

Although the Court agrees with Plaintiffs' Doe argument generally, it rejects Plaintiffs' invocation of judicial estoppel.  Judicial estoppel is appropriate when the party asserting an argument has already *succeeded* on an inconsistent argument in a legal proceeding.  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations.'"  *Id.* at 750-51 (quoting *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991)).

Here, the Amended Countercomplaint superseded the first countercomplaint before the Court could issue any ruling.  Judicial estoppel simply does not apply.

Accordingly, the Court grants Plaintiffs' motion to dismiss Does 1-10 but does not foreclose future allegations against them based on judicial estoppel.

E.    *Complexity*

Lastly, Plaintiffs argue that Counterclaim 1 is a permissive counterclaim that the Court should not allow because its inclusion will hinder judicial economy and needlessly complicate the litigation. (Doc. 27-1 at 11). Rule 13 provides for two types of counterclaims: compulsory and permissive. Fed. R. Civ. P. 13. Compulsory counterclaims arise out of the same transaction or occurrence as the opposing party's claim, and do not require adding a party over whom the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a)(1). A permissive counterclaim is any counterclaim that is not compulsory. Fed. R. Civ. P. 13(b).

To determine if a counterclaim arises out of the same transaction or occurrence, the Ninth Circuit applies a logical relationship test. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005). Under this test, a counterclaim stems from the same transaction or occurrence if "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (internal citation and quotation omitted). Applying this test, the Court liberally interprets same transaction or occurrence. *Id.* (citing *Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966)).

If the Court finds a counterclaim is compulsory, then it must allow the counterclaim in the litigation. Fed. R. Civ. P. 13(a). However, if the Court finds a

counterclaim is permissive, then the Court can refuse to hear the counterclaim if it would unduly complicate the litigation.  6 Fed. Prac. & Proc. § 1420 (3d ed. 2022).

Plaintiffs argue Counterclaim 1 is permissive because it "has nothing to do with an already complex piece of litigation." (Doc. 27-1).  Specifically, Plaintiffs assert that the alleged infringement of Defendant's registered design mark by the use of R JOURNEY is irrelevant to the disputed ownership of the GMBs, especially because the GMBs in the Amended Countercomplaint are different than those contested in the Amended Complaint (Doc. 8).  (Doc. 35 at 2, n.3).

Defendant contends that Counterclaim 1 is compulsory and must be heard because Counterclaim 1 and the Amended Complaint generally concern the Plaintiffs' unlawful use of Defendant's goodwill and infringement of its trademarks.  (Doc. 34 at 13).  Defendant does not discuss whether the Court should dismiss Counterclaim 1 if it is permissive.

The Court agrees with Plaintiffs that Counterclaim 1 is permissive because R Journey's use of its name is not relevant to the control of the GMBs and Defendant's alleged misrepresentations concerning the existence of the Complaint Campgrounds.  Instead, the central issues in Plaintiffs' complaint are whether Plaintiffs obtained the rights to the GMBs when they purchased the campgrounds and whether Defendant's ad campaigns unlawfully interfere with Plaintiffs' businesses.  (Doc. 8 at 5-11).

However, the Court refuses to dismiss Counterclaim 1 on the basis that it would confuse the litigation. As Defendant alleged with respect to its compulsory counterclaim argument, this case broadly centers on the alleged misrepresentations of each party on the Internet that have caused confusion among consumers over the affiliation of campgrounds formerly franchised by Defendant and now owned by Plaintiffs and Nonentity Parties. R Journey's use of its name is one of those alleged misrepresentations. In fact, given that Counterclaim 1 exists within the broad scope of the parties' fight over these misrepresentations, the Court finds that it would serve judicial economy to resolve Counterclaim 1 rather than force Defendant to file a separate suit.

For these reasons, the Court denies the motion to dismiss Counterclaim 1 for complicating the litigation.

## IV. Conclusion

For these reasons, the Court finds that the only issue appropriate for dismissal is the inclusion of Counter-Defendants Does 1-10.

IT IS SO ORDERED that Plaintiffs' First Motion to Dismiss the Amended Countercomplaints (Doc. 27) is GRANTED as to the dismissal of Counter-Defendants Does 1-10 and DENIED on all other issues. Plaintiffs' Motion to Dismiss KOA's Counterclaims (Doc. 19) is DENIED as moot.

IT IS FURTHER ORDERED that the relief available to Defendant is limited to actions fully under the control of Plaintiffs and excludes permanently deleting the Countercomplaint Campgrounds.

DATED this 6th day of March, 2023.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge